353]          *POLLY GRAY v. THE STATE OF OHIO.

A negro is not an admissible witness, against a quarteroon, on trial charged with a crime.

ERROR to the court of common pleas of Hamilton county. Polly Gray was indicted for robbery. On the trial, at November term, 1829, the prosecuting attorney called to the stand a *negro*, as a witness in behalf of the state. The counsel for the prisoner objected to his admission, on the ground of incompetency, under the statute regulating black and mulatto persons. The prisoner appeared, upon inspection, and of such opinion was the court, to be *of a shade of color between the mulatto and white.* The court overruled the objection, and the witness was admitted. To this opinion of the court, the counsel for the prisoner excepted; and the verdict and judgment being against her, she brought her writ of error.

VAN MATRE, for plaintiff in error:
A mulatto is a person begotten between a white and a black. 7 Mass. 68. The prisoner, then, not being a mulatto, would be competent as a witness where a white person was a party. She thus being upon a level with whites, the same privileges ought to be extended to her.

WADE, contra:
The record shows that the prisoner was not a white person. The statute extends only to cases where the party to the suit is white; and being highly penal, should receive a strict construction. Quarteroons may testify against white persons, not because they are white, but because the prohibition of the statute does not extend to them. The statute does not prohibit a black or mulatto from being a witness against an Indian. It is silent, as it regards persons of the prisoner's color, being neither black, white, nor mulatto. The common law rules must therefore apply.

354]     *By the COURT:
The witness was improperly admitted. The statute compels courts of justice to reject black and mulatto witnesses, where a

white person is a party. The statute is one which a court is called upon to execute with reluctance, yet where a case is presented, the court has no alternative but to yield to the expression of the legislative will. Three descriptions of persons are designated, by name, in the statute—white, black, and mulatto ; and these three are well known, by the same terms, in common life; but we doubt whether we can refine upon these obvious distinctions, or whether good policy, or good sense, requires us to raise the necessity for further discrimination. We are unable to set out any other plain and obvious line or mark between the different races. Color alone is sufficient. We believe a man, of a race nearer white than a mulatto, is admissible as a witness, and should partake in the privileges of whites.

We are of opinion that a party of such a blood entitled to the privileges of whites, partly because we are unwilling to extend the disabilities of the statute further than its letter requires, and partly from the difficulty of defining and of ascertaining the degree of duskiness which renders a person liable to such disabilities.

Judgment reversed.